# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

WARREN SHAFFORD

**RECEIVED**

APR 2 9 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

WEXFORD HEALTH SOURCES, Inc.

Case No: _____ 16-50111

(To be supplied by the Clerk of this Court)

JILL WAHL, M.D.
DYER,
J. ELLIS
ELIZABETH SMOTHERMON

CHATTIC

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

__XXXX__   **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code** (state, county, or municipal defendants)

_____   **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code** (federal defendants)

_____   **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.     **Plaintiff(s):**

A.     Name: WARREN SHAFFORD, #R26030

B.     List all aliases: None

C.     Prisoner identification number: R26030

D.     Place of present confinement: Dixon Correctional Center 2600 N. Brinton Ave.

E.     Address: 2600 N. Brinton Ave. Dixon, IL 61021

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.    **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.     Defendant: WEXFORD HEALTH SOURCES, Inc.

       Title: Primary Vendor for IDOC

       Place of Employment: 501 Holiday Dr. Foster Plaza 4 Pittsburgh, PA 15220

B.     Defendant: Jill WAHL

       Title: M.D., Traveling Medical Director (transfer/retired)

       Place of Employment: Wexford Health Sources, Inc. 501 Holiday Dr. Foster Plaza 4

C.     Defendant: DYER, (1st name unknown)

       Title: Physician Assistant

       Place of Employment: Dixon Correctional Center 2600 N. Brinton Ave., Dixon, IL 61021
       (See attach sheet for 3-more Defendants)

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

## II.  **Defendants/**continue:

    D.  Defendant:   J. ELLIS

        Title:       Registered Nurse

        Place of Employment:    Dixon Correctional Center
                                        2600 N. Brinton Ave.
                                        Dixon, IL  61021

    E.  Defendant:   Elizabeth SMOTHERMON

        Title:       Registered Nurse

        Place of Employment:    Dixon Correction Center
                                        2600 N. Brinton Ave.
                                        Dixon, IL  61021

    F.  Defendant:   CHATTIC, (1st name unknown)

        Title:       Registered Nurse

        Place of Employment:    Dixon Correctional Center
                                        2600 N. Brinton Ave.
                                        Dixon, IL  61021

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: NONE _____

B. Approximate date of filing lawsuit: __. NONE _____

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: __ NONE ____

D. List all defendants: NONE _____

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): NONE _____

F. Name of judge to whom case was assigned: NONE _____

G. Basic claim made: NONE _____

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): NONE _____

I. Approximate date of disposition: NONE _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

## IV.     Statement of Claim:

Medical Personnel/Staff failed to deal with Petitioner's problem
and to do so on a timely basic, where the seriousness and urgency
of his medical needs cause substantial harm and surgery was required
to prepare the damage.

   Petitioner states that the constitution, in part, is to provide
care for "serious medical needs,: where many courts have held that
a serious medical need is "one that has been diagnosed by a Physician
as mandating treatment or one that is so obvious that even a lay
person would easily recognize the necessity of a Doctor's attention,"
which did not occur in Petitioner's case, whereby, Medical Staff
failed and did not examine Petitioner while he was in extreme
Chronic Pain, which was determine much later that Petitioner require
surgery to correct his sustain injury.


   Petitioner makes the following stated claims:


   (1)   Petitioner contends that the named Defendant's unconstitu-
         tionally, willingly, intentionally, and knowingly, deprived
         him of the necessary medical care by denying him adequate
         medical treatment, and delaying treatment for surgery
         of his right arm, an injury of his Pectoralis Major Tendon.

   (2)   That Defendant's showed a deliberate Indifference to his
         serious Medical needs, where Petitioner, Mr. Shafford,
         was in serious chronic pain for over four (4)-months, and
         during each time he visted the Health Care Unit (H.C.U.)
         he continually stated that he was in serve pain, an
         infliction of cruel and unusual punishment against Petitioner.

   (3)   That Defendant's, by not adequately attending to
         Petitioner's serious medical needs, he suffered extreme
         pain before Defendants and Official(s) at Dixon Correctional
         Center recommended that he be sent to an outside hospital
         and later for surgery, further demonstrating an element
         for cruel and unusual punishment.



                    Chronology Order Of Events
                              AND
                  Defendant's Actions/Inactions




                              4

Defendant - WEXFORD HEALTH SOURCES, Inc.

That Wexford Health Sources, Inc., did knowingly, willingly, and intentionally - hire the named Defendants in this Complaint. Defendant's WAHL, DYER, ELLIS, and SMOTHERMON, and CHATTIC, in

their capacity, with Parent Organization: Bantry Group , 425 Holiday Dr., Pittsburgh, PA 15220, and through the approval of their Certified Vendor, President-Ingrid RICHTER, of ALL Med Inc, 738 W. 35th Street, Chicago, IL 60616-3438, (773)254-5555,

where the description of work to be performed by Certified Vendor: The Staffing of Medical Unit, where Prime Vendor for WEXFORD is K. Craig TROUT, Vice President & CEO (Wexford), are responsible directly for the Actions/Inactions of its Employee's.

That all stated claims against the Defendant's as alleged in this Complaint are against Wexford and its Employee's, while under their Supervision, and Tutor, and hiring requirements, where Defendant's actions/inactions are against Plaintiff,

Warren SHAFFORD.
Furthermore, Plaintiff complaints and maintains that Provider-Vendor Wexford Health Sources, Inc, has a policy or practice of not having a full-time Medical Director stationed on-site

at Dixon Correctional Center, at all times, or on-call to make the necessary decisions as to Plaintiff being initially examine of his sustain injuries, in referencing to Defendant-WAHL, Jill, M.D., Traveling Medical Director, where she

supposely had examined Plaintiff on the prescribed date, and did not see him, and signed (signature) MEMO that she had seen him. when she was not available on the date of Plaintiff's injury, (complaint herein, attached), causing delays in his

treatment and surgery based on Provider-Wexford not having a Medical Doctor/Director on-site to make decisions regarding

Plaintiff's injury.
Nevertheless, it's a practice or custom/policy that although not officially authorized, is widespread and well settled.

4(a)

Revised 9/2007

**INCIDENT:**

On October 06, 2014, approximately 1:40 p.m., Petitioner, Mr. Shafford, was on the yard lifting weights, and in the process of lifting, he heard a loud-snap and immediate sharp pain in his right shoulder.

Sometime later, he discovered that he had a serious injury to his right shoulder. (Pectoralis Major Tendon.)

An "emergency code-3" was called by Officer Workman, Badge # 8314, and was taken by Van to the back-door of the H.C.U..

At this time, he encounter Defendant (RN) CHATTIC and witness that Petitioner was in severe and extreme pain.

Upon confronting the Nurse(s) at this stage, Petitioner contends that the following violations of his constitutional rights occurred:

### Defendant - (RN) Nurse CHATTIC

That on October 6. 2014, approximately 1:50 p.m., Nurse CHATTIC (First name unknown), willingly, intentionally, and knowingly, disregarded the seriousness of Petitioner's injury by showing a deliberate indifference to his serious medical needs by refusing to help him, displaying a serious bad attitude towards petitioner for no apparent reason that he could comprehend at that time where he had done nothing to her to be treated in this matter.

Nurse CHATTIC looked at petitioner, Mr. SHAFFORD, and in a loud tone of voice stated, "there is nothing wrong with you," then she instructed and directed petitioner to "go-sit-in-the corner.

Where Petitioner contends that he should have been seen immediately by an Doctor/Physician on duty and/or on Site to examine and diagnose his injury, where she (RN-Chattic) only helped in delaying petitioner's medical treatment.

But Nurse CHATTIC only "treated his serious medical injury as a 'sick-call' complaint," where she told him in a harsh-tone-voice to go sit in the corner.

Although, Petitioner complied, he explained to Nurse Chattic that he was in excruciating pain from his right shoulder injury, and repeated this statement several times to Nurse Chattic.

Whereby, Nurse Chattic gave "no importance" or care to petitioner's serious medical needs, and further delaying his medical needs by not calling a qualified Doctor/Physician to examine him. Thereafter, he was confronted by Nurse Smothermon.

5

### Defendant - (RN) Nurse SMOTHERMON

That on October 6. 2014, approximately 2:15 p.m., Nurse SMOTHERMON (First name unknown), willfully, intentionally, and knowingly, disregarded Petitioner's painful injury, a serious medical need by refusing to attend to his medical issues, unless, "he first signed a $5.00 co-payment prior to treatment," where petitioner's injury was serious enough to warrant an "Emergency Code-3."

In accordance with 730 ILCS 5/3-6-2(f), states in part, that "....the committed person receiving medical services on a 'non-emergency basis' pay a $5.00 co-payment....," but in Petitioner's case, it was clearly on an emergency basis where Code-3 was radio-in on petitioner by Officer Workman, Badge #8314, where Petitioner should have foregone the co-payment and proceeded immediately to examine petitioner. (Exhibit # 1 ).

Petitioner contends that he should have been attended to by an attending Doctor/Physician on duty/on site to examine and diagnose him, which never occurred.
Where Nurse SMOTHERMON treated petitioner's serious injury as a sick-call complaint, and "charged" petitioner to be seen.

Petitioner explained to Nurse Smothermon that he was in excruciating pain from his right shoulder injury, and he repeated this several times to Nurse Smothermon that he was in pain.

Accordingly, Nurse Smothermon gave no relevance to petitioner's serious medical needs, by not calling in a Doctor/Physician to examine him. Where Nurse Smothermon personally diagnose petitioner's medical need and recommended pills (Ibuprofen) for his pain, and Yard/Gym Restriction. (See Exhibit # 2).

### Defendant - (RN) Nurse Ellis, J.

That on October 08, 2014, approximately 11:30 a.m., male-Nurse ELLIS, J., willingly, intentionally, and knowingly, disre-garded Petitioner's serious medical needs by stating to him, "that nothing is wrong with him," because he could raise his arm, also while displaying the severe pain he was having in trying to lift his arm, where Nurse Ellis mention(s) and noted that there is bruising to his right shoulder area, and no lumps felt in shoulder, further stating "he had acute pain R/t shoulder injury." (see Exhibit # 3 ).

Whereby, Nurse Ellis gave no-more importance, or care to petitioner's serious medical needs by delaying his medical treat-ment and required medical surgery by not immediately calling a qualified Doctor, on-site, to examine his injuries, further stating only that he was scheduled to see M.D. on 10/10/2014.

The only treatment Nurse Ellis gave Petitioner was to give him a sick-call pack of Ibuprofen, 200 mg., #18-tab each.

Petitioner states: that it has been 2-days that he has been complaining about the serious pain he is constantly enduring.

### Defendant - P.A. DYER

That on October 10, 2014, approximately 8:50 a.m., Physician Assistant (P.A.) DYER (First name unknown), willinfully, intentioally, and knowingly, showed a deliberate indifference to petitioner's medical needs by not sending him out immediately for professional medical counsel and surgery due to an tendon snapping and muscle appeared disconnected from his shoulder.

Whereby, after examination of Petitioner a deliberate indif-ference also occurred to his serious medical treatment by delaying and arranging surgery to correct his injuried shoulder, and where he continues to state that he is in chronic pain due to nerve damage to his right shoulder.

Even after P.A. DYER noticed that the anterior region showed reddish purplish bruise ar r/upper chest was apparent during examination, and where petitioner continue to complain about the pain he was having, where the only treatment prescribed for petitioner was to Order X-rays for him and gave notice of Gym/ Yard Restriction, also giving him some Motrin at 400 mg.. (see Exhibit # 4 ).     Please note: Petitioner has nerve damage to right shoulder, and it has now been 6-days with petitioner complaining about the pain he is enduring.

### Defendant - Jill Wahl, M.D.,
### Traveling Medical Director

Date of incident on October 06, 2014, (10/06/14), Defendant WAHL, M.D., did willfully, intentionally, and knowingly, dis-regarded Petitioner's serious medical needs "by failing to examine or personally talk to petitioner one-on-one about his injury to determine if he required any medical attention," thereby, delaying his treatment and the arrangement for Mr. Shafford, Petitioner, to receive surgery.

Ultimately, disregarding petitioner's serious medical needs and the extreme pain that he was suffering at that time, showed cruel and unusual punishment and deliberate indifference by also failing to attend to his required medical treatment due to his injury.

7

Defendant, Doctor WAHL's only attention to Petitioner's treatment, "without seeing him," was to put him on Gym/Yard Restriction for 14-days, and have him sign a MEMO for receipt, which she provided to support his acknowledgment that he was on restricted activities, which she signed said acknowledgment and treatment of his right shoulder injury on September 11, 2014, (9/11/14), clearly showing that "she did not see petitioner" concerning his injuries, or even cared about his injury, given the date she (WAHL-Defendant) signed the MEMO-Gym/Yard Restriction to authorize his non-participation in any type of gym or yard activities for 14-days. (See Exhibit # 5 ).

That on November 10, 2014, approximately 1:50 p.m., Petitioner seen Defendant-Doctor WAHL, Jill, M.D., Traveling Medical Director, that she did willfully, intentionally, and knowingly, denied his serious medical needs by not immediately sending petitioner to an outside hospital to a qualified professional Physician to properly attend to his medical needs after Petitioner stated he was still in pain, and after noting/examining him, that a deformority existed where his right pectoral muscle showed a bulge, and also noting "a possible tear of pectoralis," further showing a claim of cruel and unusual punishment and deliberate indifference to his serious medical treatment for a qualified surgeon by delaying and arranging surgery to correct his injured right shoulder. (See Exhibit # 6 ).

That on November 12, 2014, Doctor WAHL, J., subsequently approved Petitioner for U.I.C. (University of Illinois Chicago), -Ortho within 4-6 weeks, (See Exhibit # 6 ).

HOSPITAL
Katherine Shaw Bethea
(K.S.B.)

On December 17, 2014, Petitioner, Mr. Shafford, was finally seen by an Orthopedics Doctor at K.S.B. Hospital, by Thomas HERNANDEZ, M.D., at approximately 9:00 a.m..

Upon examination of petitioner's right shoulder and anterior chest wall "reveals significant deformity about the right anterior chest and loss of his normal anterior axillary fold consistent with a chronic pec tendon rupture."
Also, noting that he has been wearing a sling for the past 2½ - months, and that "his shoulder has actually gotten worse during that time period." (See Exhibit # 7 ).

8

On February 11, 2015, Petitioner seen Doctor HERNANDEZ for post-operative visit, where he discussed the risks which included but were not limited to bleeding/infection, "nerve or vessel injury," long-term chronic pectoralis tendon weakness, significant risk of re-rupture due to chronic nature of the tear. (See Exhibit # 8 ).

On February 17, 2015, surgery was performed on Petitioner, by Doctor Hernandez,Thomas, M.D., where he again had an discussion with Mr. SHAFFORD regarding the significant risk of re-rupture due to the chronicity of the tear, long-term pain, and stiffness of the shoulder, "nerve or vessel injury." (See Exhibit # 9 ).

As stated above, Petitioner-SHAFFORD, W., pro se, continues to suffer from chronic pain, whereas, chronic pain refers to pain that persists after an injury heals.

**WHEREFORE,** Petitioner contends that he has (1) Showed the delay of his surgery, approximately 4-months later, based on the action/inactions of Prison Officials; (2) showing of deliberate indifference to his serious medical needs; and (3) the chronic pain he endure during the months prior to surgery showing of cruel and unusual punishment toward Petitioner.

Petitioner has a known **disability** as define in the Americans Disabilities Act. Please refer to Appoint of Counsel, herein-attached.

WARREN SHAFFORD
Reg. No. R26030
DCC
2600 N. Brinton Ave.
Dixon, IL  61021

SUBSCRIBED and SWORN to before me

this 27 ᵗʰ day of April 2016

NOTARY PUBLIC

*"OFFICIAL SEAL"*
*SALLY A. JOOS*
*Notary Public, State of Illinois*
*My Commission Expires 07/12/2016*

9

**V.     Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

(1) To deter Defendant's from such actions/inactions as
     described in this Law Suit; (2) Receive Compensatory and
     Punitive Damages; and (3) To TERMINATE Job Employment on
     Defendant's CHATTIC, SMOTHERMON, and ELLIS.

**VI.**     The plaintiff demands that the case be tried by a jury. XXX YES  ☐  NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _27_ day of _APRIL_, 20_16_

_Warren Shafford_
(Signature of plaintiff or plaintiffs)

WARREN SHAFFORD
(Print name)

R26030
(I.D. Number)

**SUBSCRIBED** and **SWORN to**

BEFORE ME THIS _27th_

DAY OF _April_

_2016_

Dixon Correctional Center
2600 N. Brinton Ave.
Dixon, IL  61021

(Address)

_Sally A Joos_
NOTARY PUBLIC

_10_

"OFFICIAL SEAL"
SALLY A. JOOS
Notary Public, State of Illinois
My Commission Expires 07/12/2016

Revised 9/2007

IN THE
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

WARREN SHAFFORD

_____  )
Plaintiff/Petitioner         )
                             )
            Vs.              )                    No._____
                             )
WEXFORD HEALTH SOURCES, Inc  )
et. al.                      )
Defendant/Respondent         )

## PROOF/CERTIFICATE OF SERVICE

TO: Clerk, United States
    District Court
    327 S. Court Street
    Rockford, IL 61101

TO: Attorney General
    Lisa M.Madigan
    100 W Randolph St 12th Fl
    Chicago,IL 60601

PLEASE TAKE NOTICE that on **April 27,** _____, 20 **16** I placed the
attached or enclosed documents in the institutional mail at **Dixon**
Correctional Center, properly addressed to the parties listed above for mailing through
the United States Postal Service.

DATED: **April 27,2016**

/s/ _Warren Shafford_

NAME: WARREN SHAFFORD
I.D.O.C.#: R26030
Dixon                 Correctional Center
P.O. Box: 2600 N. Brinton Ave.
   Dixon          ,IL    61021

Subscribed and sworn to before me this **27ᵗʰ** day of **April**, 20 **16**.

_Sally A Joos_
Notary Public

"OFFICIAL SEAL"
SALLY A. JOOS
Notary Public, State of Illinois
My Commission Expires 07/12/2016

STATE OF ILLINOIS )
                   ) SS
COUNTY OF LEE      )


# A F F I D A V I T

I, WARREN SHAFFORD _____, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

That I have read this Civil Complaint to the best of my knowledge, and had this complaint read to me serveral times; that I understand the claims that I have brought forward in this civil complaint against the named Defendant's mentioned in complaint. That this complaint was prepared by another individual on my request for assistance, because I have no knowledge in these legal proceedings regarding civil complaints and in legal procedures/laws of this nature. That all exhibits herein-attached are approved by me, the undersigned. With this complaint that I have submitted Motion for Attorney Representation and a Statement for conderation on Motion for Attorney Representation, with attached exhibits A-D, showing that I am a person with a **disability.** That I have enclosed letters showing that I have tried to obtain Counsel representation. That I have submitted form, INFORMA PAUPERIS Application and Financial Affidavit with this Complaint. That I have submitted six(6) summons on the mentioned Defendants to this Honorable District Court-Clerk. A letter stating that I have met the requirementpursuant to the Prison Litigation Reform Act (PLRA) of 42 U.S.C. § 1997e(a), where delay was not caused by Plaintiff, and upon response from A.R.B., Plaintiff will immediately forward to this Honorable Court.

Subscribed and Sworn to before me this 27th day of April, 2016.

_Sally a Joos_
Notary Public

Respectfully Submitted,

_Warren Shafford_
Affiant
Name: WARREN SHAFFORD
ID# R26030
Dixon Correctional Center

"OFFICIAL SEAL"
SALLY A. JOOS
Notary Public, State of Illinois
My Commission Expires 07/12/2016

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, <u>WARREN SHAFFORD, R26030</u>, affiant, do hereby declare and affirm pursuant to 28 USC 1746, 18 USC 1621, or 735 ILCS 5/109, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the forgoing documents are known to me and are accurate to the best of my knowledge and belief. Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the forgoing matter is taken in good faith.

Signed on this <u>27</u> day of <u>APRIL</u>, 2016.

<u>Warren Shafford</u>
Affiant

SUBSCRIBED and SWORN to before me

this <u>27th</u> day of <u>April</u>, 2016.

<u>Sally A Joos</u>
NOTARY PUBLIC

"OFFICIAL SEAL"
SALLY A. JOOS
Notary Public, State of Illinois
My Commission Expires 07/12/2016

EXHIBIT #1

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Authorization for Payment

Posting Document # _____ 014084 _____ Date _____ 10-06-14 _____

Offender Name _____ Shatter, Warren _____ ID# _R2L050_ Housing Unit _26-04_

Pay to _____ Dixon CC _____

Address _____

City, State, Zip _____ Dixon, Il _____

The sum of _____ Eleven _____ dollars and _____ 30 _____ cents charged to my trust fund

account for the purpose of _____ Sick call co-payment _____

☐ I hereby authorize payment of postage for the attached mail ☐ I hereby request information on electronic funds transfers to be placed in the attached mail

Offender Signature _____ X _____ ID# _____

Witness Signature _____

☐ Approved ☐ Not Approved Chief Administrative Officer Signature _____

Postage applied in the amount of _____ dollars and _____ cents

Distribution: Business Office Offender Mail Room

DOC 0296 (Eff. 1/2006)
(Replaces DC 828)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Injury Report

Offender Name: Shafford, Warren                    ID#: R26030

Age: 54    Date of Birth: 03-03-1960    Sex: Male    Race: Black

Date of Injury: 10-06-14    Time of Injury: approximately    ☐ am  ☐ pm  Location: _____

How did the injury occur?    Inmate, was lifting weights in the yard and injured Right Shoulder.

Was it witnessed by staff?  ☑ No    ☐ Yes (If yes, please list names)

---

**Location in facility:**

☐ LTA (gym, basketball, football, etc.)

☐ Group (therapy)

☐ Housing Unit (cell, dayroom, tv room, etc.)

☐ School (classroom, library)

☐ Kitchen

☑ Other  yard

**Type of Injury:**

☑ Sports

☐ Assault

☐ Job Related

☐ Non-job Related

☐ Self-inflicted

☐ Fight

Signature _____    Title  RN    Date  10-06-14

### (Medical Report on Reverse Side)

EXHIBIT #2

Distribution:  Offender Medical File

Side 1

*Printed on Recycled Paper*

DOC 0313 (Eff. 07/2006)
(Replaces DCA7111-1A1)

Offender Name: _____

Date of medical examination: 10-06-14  Time: approximately 210 □ am ☑ pm  Physician Contacted: □ Yes ☑ No

**S (Subjective Findings):** "It feels like it is inflamed." "They think I just want motrin"

_____

_____

_____

**O (Objective Findings):** _____

Vitals: T 97.8  P 72  R 20  BP 144/70 ~~148/90~~  Tetanus unkn.

S/R's lifting weights, constant ache to Right medial Shoulder down to axillae +2 Radial pulses, bilateral strong equal hand grasps, Skin intact, full ROM to Right extremity small pain @ rest, large pain ROM, no deformities to Right Shoulder noted, denies other injuries, moaning

**A (Evaluation of Injury):** Alteration in Comfort, Post Sports Injury

_____

_____

**P (Treatment and Follow-up):** Ice PRN TID, SC motrin, Gym/Yard Restriction X 14 days, PU PRN  issued 180 tabs 600 mg

_____

_____

**Disposition of patient:**
□ Return to assignment   ☑ Housing Unit 26-04   □ Lay in   □ Infirmary   □ Segregation
□ Off-site referral for treatment (Destination) _____

Cynthia G. Winton RN _____   Cyn _____ _____
Print Name of Person Completing Form                          Signature

R N _____                    10-06-14
Title                                        Date

---

## To Be Completed By Physician

I have reviewed this report and would like to see this offender: □ Immediately  □ Next Sick Call  ☑ PRN

Susan Tuell _____   S _____ FWP BC   10-6-14
Print Physician Name                    Physician's Signature            Date

Side 2

Ex. #2(a)

Distribution:  Offender Medical File              Printed on Recycled Paper              DOC 0313 (Eff. 07/2006)
                                                                                          (Replaces DCA7(11-1A1)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

Dixon _____ Center

Offender Information:

Last Name: Stafford   First Name: Warren   MI: ____   ID#: R26030

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10/6/14 | RN note - Sick call | P: $5.00 copay |
| 1:15pm | S: "I forgot to ask the | - Add to MD |
| | Dr on 9/29/14 for a renewal | line for eval |
| | of my Motrin - + I need a | of need for |
| | permit for when I go on a | Motrin + |
| | Writ to be able to wear | eval'd req for |
| | my New Balance tennis | permit to |
| | Shoes + the heel cup when | wear New Bal |
| | I go out on writs + not | shoes c̄ heel cup |
| | the canvas shoes they give on writs | |
| | O: A+O x3. U ST.98 P70 R18 | |
| | BP 138/70 WT 230. I'm just | |
| | seen 1 wk ago + 5'8" forgot | (circled) MD 10/18/14 |
| | to ask MD for motrin & permit | |
| | for shoes to wear on writs | |
| | that have support + canvas c̄ heel cup | |
| | A: rq med refill + permit for shoe E Smeelee | |

Distribution: Offender's Medical Record

Printed on Recycled Paper    Ex. #2 (b.)

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_Dixon Correctional_ Center

Offender Information:

Last Name: _Shafford_   First Name: _Warren_   MI: ___   ID#: _R26030_

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10-06-14 210 PM | RN Note - IM to HCU report injury lifting weights to see injury report, Gym/Yard Restriction x10 days, | C.W. |
| 10/8/14 9A | M.D. VISIT  B/P___ TPR___ WT___  CC: Reg Motrin  IM not seen at refused 10/10/14 — signature | |
| 10/8/14 1130 A | RN Sick Note  S: "I hurt my shoulder, the muscle isn't attached to my shoulder anymore"  O: Bruising to R shoulder area, IM able to lift arm c pain, no lumps felt in shoulder.  A: Acute pain R/T shoulder injury. | P: Motrin per SN protocol, assured IM he is already scheduled to see MD on 10/10/14 |

Distribution: Offender's Medical Record

EXHIBIT #3

DOC 0064 (Eff. 9/2002) (Replaces DC 7147)

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_DIXON_ Center

Offender Information:

| SHAFFORD | WARREN | | ID#: R26030 |
|---|---|---|---|
| Last Name | First Name | MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 10/10/14 8:50A | PA<br>MD VISIT<br>BP 136/68 PR 68 18 WT 236<br>CC: Reg. Motrin & permit for<br>New Balance Shoes w/inserts<br>to be worn on units<br>Ⓢ I/M states here for renewal | Ⓟ RICE treatment |
| | motrin, had lifted weights | Motrin 400 mg |
| | 10/6/2014 in the afternoon<br>and injured Ⓡ shoulder. Came | po bid pc prn<br>for pain (# 40/mo) x 2 mo |
| | here for emergency treatment | • Ⓡ shoulder X ray |
| | "... seems like my deltoid is | • Ⓡ hand including |
| | disconnected from my shoulder." | • Ⓡ wrist X ray |
| | Cannot lift meal tray w/ Ⓡ hand | • PERMIT FOR NEW |
| | "my knuckles feel like they've | BALANCE SHOES w/ HEEL<br>CUPS OR WRITE DUPLICAT |
| | been working out stiff". | NO BACK 26X X6 MOS.<br>THROUGH 3/24/15. |
| | Ⓞ NAD, A&O x 3 | • Schedule visit |
| | Ⓡ shoulder TTP anterior region | |
| | reddish, purplish bruise at Ⓡ | w/ X ray reports |
| | upper chest proximal to Ⓡ shoulder jt. | |
| | FROM w/ pain | Avoid lifting, |
| | Ⓡ hand, TTP metacarpal inferior | gym/ yard |
| | tibia Ⓡ wrist, adequate articulation, | restriction through |
| | FROM w/ pain | 10/20/14, as ordered |
| | Ⓐ shoulder pain, wrist pain, | 10/06/14. |
| | hand pain | MCS PA-c |

EXHIBIT # 4

/ orders noted ↗
↗ p x-ray reports on
chart - M. Carter
hw

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)



# Illinois
# Department of
# Corrections

**Pat Quinn**
Governor

**S. A. Godinez**
Director

Dixon Correctional Center
2600 N. Brinton Avenue
Dixon, IL 61021

Telephone: (815) 288-5561
TDD: (800) 526-0844

# M E M O R A N D U M

DATE:

TO: Inmate Name/ DOC #/ Housing Unit: _Shafford Warren, R26030_
_Hu 26-04._

FROM: Dr. Jill Wahl, Traveling Medical Director
Dixon Correctional Center

SUBJECT: GYM/YARD RESTRICTION

Due to your complaints of recent injury and/or symptoms associated with your medical condition, I have advised that you not participate in any type of gym or yard activities for ___14___ days. This is a medical order given in your best interest and must be adhered to.

_Wahl 9/11/14_

Dr. Jill Wahl, M.D., Traveling Medical Director       DATE

I acknowledge that I have received this memo and understand its content.

_M R Shafford_          10-06-14
Inmate Name                    DATE

Cc:        GP GYM/GP YARD OR STC GYM/STC YARD
           Housing Unit Control Officer
           Medical Records

_EXHIBIT #5_

ILLINOIS DEPARTMENT OF CORRECTIONS

Offender Outpatient Progress Notes

Dixon _____ Center

Offender Information:

Shafford Warren _____ R 26030

Last Name / First Name / MI    ID#: _____

| Date/Time | Subjective, Objective, Assessment | Plans |
|-----------|-----------------------------------|-------|
| 11-10-14 11:50 pm | HR VSS  T 97² | |
| | BP 142/82  TPR 76-16  WT 233 | |
| | CC: MEDICAL VISIT FOLLOW UP | |
| | 2nd opinion Ⓡ shoulder + chest bulge     Brandon | |
| | S: Lifting weights 260 something# | P) Request ortho |
| | pushing up from lying on | evaluation |
| | bench on 10/6. Arm snapped | |
| | Pain @ Ⓡ shoulder | F/U ~2 weeks |
| | O: Deformity — defect @ insertion | med director |
| | of Ⓡ pectoralis c̄ bulge @ | |
| | pectoralis muscle. ↓ ROM c̄ abduction & flexion | |
| | A: Possible - tear of pectoralis | |
| | | [signature] |
| 11/12/14 12³⁰ | MD PA | |
| | Discussed in collegial c̄ Dr. Ritz PA | P) Request P.T. |
| | approved for UIC ortho within 4-6 weeks | Schedule ortho UIC |
| | Rec: PT to start ROM | |
| | Noted 11-12-14 #Brandon RN 2:30 pm | [signature] |



**KSB** *HOSPITAL*
KATHERINE SHAW BETHEA HOSPITAL

Patient: **SHAFFORD, WARREN**

| | |
|---|---|
| MR#: | **306345** |
| ECD#: | **686758** |
| D/T: | **2014/12/17  09:01** |
| DOB: | **03/03/1960** |

#PHY: Thomas Hernandez, MD
12/17/14 : 09:01am
Office Note: Orthopedics
Provider: Thomas Hernandez, MD
TR : HET :
Clinical Staff: Denise Slager, MA
Patient's Date of Birth: 03/03/60    MR#: 306345

Clinical Staff Documentation:
REASON FOR VISIT:   New Patient
Trauma or injury:  Yes
Seen in the ER recently for this problem:  Pain Level: 3 Right shoulder
Patient presents  accompanied by his
Workers-comp related:  No
The pain is described as:  aching, throbbing
Location of pain:  anterior

MEDICATIONS: Reviewed.

ALLERGIES: Reviewed.
NKDA

MAJOR PROBLEM LIST: Reviewed.

SOCIAL HISTORY:
Smoking: Former
Passive Smoking Exposure: No
Smokeless Tobacco Use: No
Alcohol Use:  Completely abstains

VITALS: Bp: 134/84, Left Arm, Pulse: 61
Height: 5'9", Weight: 109.5 kg
Respirations: 20
BMI:   35.65 kg/m2

Provider Documentation:

SUBJECTIVE
Mr. Shafford is a 54-year-old right hand dominant black male prisoner from the
local Department of Corrections who sustained an injury to his right shoulder
and chest wall when he was bench pressing back on October 6 when he felt a
significant pop and had pain about his right shoulder and upper chest. Ever
since then, he has had some deformity about his right side of his chest wall and
some significant anterior shoulder pain. He has been wearing a sling for the
past 2-1/2 months. His shoulder has actually gotten worse during that time
period. He had done minimal therapy or anything else at the prison. He did have
x-rays done back in early November in our emergency room (ER) which were
negative for any significant fracture, dislocation or other bony abnormality.
His pain as stated is localized mainly to the superolateral aspect of his chest
and the anterior aspect of his shoulder. It is aggravated with any movement of
the shoulder. His shoulder pain is aggravated with any attempts at overhead

EXHIBIT # 7

activity as well. There is no radiation of pain. There is no numbness, tingling or other complaints. He states it does affect his activities of daily living as the shoulder has been very sore and very stiff over the past month or so. Past medical history, past surgical history, family history, social history, medications, allergies and review of systems are all reviewed per the patient information data sheet and was placed in the chart today.

OBJECTIVE
GENERAL:  On physical exam, he is alert and oriented times 3 in no acute distress.
HEENT:  His head is normocephalic.
RESPIRATORY:  He is breathing comfortably with no tachypnea or dyspnea.
CV:  Reveals 2 plus palpable radial pulse to the right upper extremity.
SKIN:  Reveals no lesions, breakdowns or wounds to the right upper extremity.
NEUROLOGICAL:  Reveals no motor or sensory deficits to the right upper extremity.  There is no obvious lymphadenopathy about the right upper extremity.
EXTREMITIES:  Examination of the right shoulder and anterior chest wall reveals significant deformity about the right anterior chest and loss of his normal anterior axillary fold consistent with a chronic pec tendon rupture. There is tenderness to palpation in the region of the pec insertion as well. He does have significant stiffness both actively and passively of the right shoulder with forward flexion only to about 110 degrees, abduction about 100 degrees. External rotation to 45 degrees with the arm at the side and about 70 degrees with the arm abducted. The right upper extremity is distally neurovascular intact. There is no tenderness to palpation about the cervical spine or trapezius.

X-rays were reviewed as stated from back in November of the shoulder which are negative for any fracture, dislocation or other bony abnormality.

ASSESSMENT
A 54-year-old male with a
1. Right chronic pec tendon rupture.
2. Right shoulder adhesive capsulitis and impingement.

PLAN
I had a long discussion with Mr. Shafford today explaining the diagnosis as well as the treatment options. The most important thing is we get him started with physical therapy and discontinue all immobilization of the shoulder. He does not need a sling. He can use the shoulder for normal activities and should be encouraged to do so. I want to get an MRI of the right shoulder as well to assess the level of retraction of the pec tendon to see if this is something that is reasonably reparable given his overall age and functional status. We will see him back for results of the MRI.

New major problem(s) today:  None

New diagnoses today:  Yes
RT CHRONIC PEC MAJOR RUPTURE
RT SHOULDER IMPINGEMENT/ADHESIVE CAPSULITIS


BMI follow-up plan discussed with the patient?  No

Patient education resources provided to the patient today?  Yes
Y

**KATHERINE SHAW BETHEA HOSPITAL**
403 E. First St., Dixon, IL 61021
(815) 288-5531

This nicely reapproximated the reconstructed tendon down to bone and I was
very happy with the tension-free repair but under the appropriate amount of
tension which nicely recreated the normal pectoralis contour medially. The
arm was then taken through a gentle range of motion to note the safe zone
of external rotation. There was no evidence of any significant undue
tension on the repair even with gentle external rotation or abduction. At
that point the case was complete. Pictures were taken of both the prepared
reconstructed tendon and the repaired reconstructed tendon for
documentation purposes. The wound was then copiously irrigated with normal
saline solution and closed in layers. A sterile dressing was subsequently
placed and the patient was subsequently awoken from anesthesia without
complication and transferred to the recovery room in stable condition.

Electronically Signed by
Thomas Hernandez, MD 02/25/2015 03:56 P
D: 02/17/2015 10:58 A  T: 02/17/2015 11:55 A
/do  Job#: 11754990

cc:  Thomas Hernandez, MD



KSB HOSPITAL
KATHERINE SHAW BETHEA HOSPITAL

Patient: **SHAFFORD, WARREN**

| | |
|---|---|
| MR#: | 306345 |
| ECD#: | 713470 |
| D/T: | 2015/02/11 10:51 |
| DOB: | 03/03/1960 |

#PHY: Thomas Hernandez, MD
02/11/15 : 10:51am
Office Note: Orthopedics
Provider: Thomas Hernandez, MD
TR : HET :
Clinical Staff: Tasha Garcia, MA
Patient's Date of Birth: 03/03/60     MR#: 306345

Clinical Staff Documentation:
REASON FOR VISIT:  Post-Operative Visit
Trauma or injury:  Pain Level: 0
Patient presents  accompanied by his

MEDICATIONS: Reviewed.
Rx: ASPIRIN 81 mg 1 tab at bedtime
Rx: ATENOLOL 50 mg 1 tab twice daily
Rx: HCTZ 25 mg 1 tab daily
Rx: LISINOPRIL 40 mg 1 tab at bedtime
Rx: NAPROXEN 500 mg PRN
Rx: NORVASC 10 mg 1 tab bedtime
Rx: ROBAXIN 500 mg PRN

ALLERGIES: Reviewed.
NKDA

MAJOR PROBLEM LIST: Reviewed.

SOCIAL HISTORY:
Smoking: Former
Passive Smoking Exposure: No
Smokeless Tobacco Use: No
Alcohol Use: Completely abstains

VITALS: Bp: 161/78, left arm, Pulse: 74
Height: 5'9", Weight: 108 kg
Respirations: 18
BMI:   35.16 kg/m2

Provider Documentation:

SUBJECTIVE
Mr. Shafford is a 54-year-old male prisoner with a chronic pectoralis tendon
that is here today for preoperative evaluation. I have had thorough discussions
with him on several occasions regarding the risks and benefits of the upcoming
procedure.
OBJECTIVE
On physical exam of the right pectoralis region is unchanged. He still has
obvious deformity about his pectoralis medially and loss of his anterior
axillary fold with abduction of the arm. The right upper extremity is distally
neurovascularly intact.

Page 1 of 2

*Exhs B27 # 9*

SHAFFORD CASSEN MARK CV 52041461 02/26/2015 Thomas Hernandez Age 25 05/01/95 7

ASSESSMENT
A 54-year-old inmate with a right chronic pectoralis tendon tear.

PLAN
I had a long discussion today again with Mr. Shafford discussing the risks and
benefits. We will plan on proceeding with a right pectoralis tendon repair with
possible allograft reconstruction due to its chronic nature. We thoroughly
discussed the risks which included but were not limited to bleeding/infection,
nerve or vessel injury, continued stiffness or pain, long-term chronic
pectoralis tendon weakness, significant risk of rerupture due to the chronic
nature of the tear, deep venous thrombosis (DVT) or pulmonary embolism (PE),
anesthesia complications up to and including perioperative mortality. The
patient understands these risks and wishes to proceed. Informed consent was
subsequently obtained and we will plan on proceeding with surgery next week.


New major problem(s) today:  None

New diagnoses today:  None

BMI follow-up plan discussed with the patient?  No

Patient education resources provided to the patient today?  Yes
Y



```
#       SIGNED BY TRANSCRIPTION DEPARTMENT  (TR)      02/12/2015 09:44AM
#     CO-SIGNED BY THOMAS HERNANDEZ, MD  (HET)       02/25/2015 08:41AM
```

SHAFFORD, WARREN-MedRec #306345 Operative Note - Single Signature-2/17/2015-Hernandez, Thomas  MD-SU0070-1pg

## KATHERINE SHAW BETHEA HOSPITAL
### 403 E. First St., Dixon, IL 61021
### (815) 288-5531

| | | | | | |
|---|---|---|---|---|---|
| Patient | SHAFFORD WARREN, WARREN | MR#: | 306345 | | |
| Name: | WARREN WARREN | | | | |
| Date: | 02/17/2015 | Serv. | SUR | | |
| | type: | | | | |
| DOB: | 03/03/1960 54 | Room: | 1OPS102 10 | | |
| Dictated | Thomas Hernandez, MD | Acct #: | 0713399 | | |
| by: | | | | | |
| | PCP: | | | | |

OPERATIVE REPORT
PREOPERATIVE DIAGNOSIS
Right chronic pectoralis tendon rupture.

POSTOPERATIVE DIAGNOSIS
Right chronic pectoralis tendon rupture.

SURGERY PERFORMED
Right open pectoralis major tendon reconstruction with Achilles allograft.

ANESTHESIA
General with interscalene block.

SURGEON
Thomas Hernandez, MD

ASSISTANT
Tyler Gunderson, MD

ESTIMATED BLOOD LOSS
Minimal.

IV FLUIDS
Per anesthesia report.

TISSUE SENT
None.

COMPLICATIONS
None.

IMPLANTS PLACED
Total of 3 Mitek G2 suture anchors and an Achilles allograft for the reconstructions.

INDICATION FOR PROCEDURE
Mr. Shafford is a 54-year-old prison from the local Department of Corrections who nearly 6 months ago sustained a rupture of his right pectoralis tendon while bench pressing. I did not see him until about the 4 month post injury mark and immediately recommended potential operative intervention. After thorough discussion of the risks and benefits he wished to proceed with surgery. After going through the approval process at the prison he is now scheduled for surgery today. I had a thorough discussion regarding the risks and benefits of the procedure which include but were not limited to possible need for allograft due to tendon retraction, possible inability to repair the rupture if it was a myotendinous junction

*EXHIBIT # 9*

**KATHERINE SHAW BETHEA HOSPITAL**
**403 E. First St., Dixon, IL 61021**
**(815) 288-5531**

tear, significant risk of rerupture due to the chronicity of the tear, long-term pain and stiffness of the shoulder, nerve or vessel injury, deep venous thrombosis (DVT) or pulmonary embolism (PE), anesthesia complications up to and including perioperative mortality. The patient understood these risks and wished to proceed. Informed consent was subsequently obtained and he was scheduled for surgery today.

DETAILS OF SURGERY
The patient's operative site was marked in the preoperative holding area. He was subsequently taken to the operating room where a time out was performed. He was then given 2 grams of Ancef for preoperative antibiotic prophylaxis. Examination under anesthesia revealed a complete lack of anterior axillary fold and prominence of the pectoralis medially suggestive of a complete rupture. After prepping and draping and after positioning on the beach chair position with the head and neck in neutral and all bony prominences well padded, a standard 7-8 cm incision was made in the deltopectoral region. Dissection was carried down through the skin and subcutaneous tissue to the level of the deep fascia. As soon as we incised the deepest layer of subcutaneous tissue you could see a defect from where the pectoralis tendon had ruptured and dissection out laterally to the lateral aspect of the intertubercular groove, it immediately revealed that this was in fact a complete avulsion of the pectoralis tendon from its bony insertion. There was minimal residual tendon left attached to the lateral aspect of the intertubercular groove. There was a complete scarred down layer immediately which completely obliterated the retracted tendon and this was carefully dissected out until we could fully identify the avulsed tendon stump. Once the avulsed tendon stump was identified it was tacked with a stay suture and blunt finger and scissor dissection was then used both superficially and deep to the pectoralis tendon muscle mass in order to fully mobilize it and free it of all scarred down adhesions. Once the tendon was fully mobilized it was still not able to be fully mobilized to the lateral aspect of the intertubercular groove and I felt like a primary repair with only this retracted native tendon would be under undue tension and deemed the surgery to failure. With that in mind, the decision was made to proceed with the repair augmented with Achilles allograft. Achilles allograft was then opened and defrosted. It was folded over and enveloped around the mobilized pectoralis tendon with about 1.5 to 2 cm of additional length left distal to the tendon stump. This graft was sewn along its superior and inferior edges of the pectoralis tendon with a running locked No. 1 Vicryl suture x2. This nicely approximated the allograft to the avulsed pectoralis tendon. We were then ready to proceed with the repair to the bony avulsion site. The lateral aspect of the intertubercular groove was roughened up using a Cobb elevator and we were ready to proceed with anchor placement. A total of 3 Mitek G2 anchors were placed a little less than 1 cm apart along the lateral aspect of the intertubercular groove for ultimate repair. The suture from the inferior anchor was then placed in Krackow fashion starting at the edge of the Achilles allograft and extending medially approximately 5-6 cm to nicely purchase both the enveloped Achilles allograft and the underlying pectoralis tendon. A similar Krackow suture was placed over the superior border using the superior most suture anchor. Once these 2 Krackow sutures were placed the middle anchor suture was placed in Mason-Allen fashion and we were ready to tie down the repair. Using the limb of the suture that had not been used for the Krackow as the post to slide the tendon down into its bony bed, we subsequently tied first the inferior anchor followed by the superior anchor and lastly the middle anchor that had been passed in Mason-Allen fashion.

**KATHERINE SHAW BETHEA HOSPITAL**
403 E. First St., Dixon, IL 61021
(815) 288-5531

This nicely reapproximated the reconstructed tendon down to bone and I was
very happy with the tension-free repair but under the appropriate amount of
tension which nicely recreated the normal pectoralis contour medially. The
arm was then taken through a gentle range of motion to note the safe zone
of external rotation. There was no evidence of any significant undue
tension on the repair even with gentle external rotation or abduction. At
that point the case was complete. Pictures were taken of both the prepared
reconstructed tendon and the repaired reconstructed tendon for
documentation purposes. The wound was then copiously irrigated with normal
saline solution and closed in layers. A sterile dressing was subsequently
placed and the patient was subsequently awoken from anesthesia without
complication and transferred to the recovery room in stable condition.

Electronically Signed by
Thomas Hernandez, MD 02/25/2015 03:56 P
D: 02/17/2015 10:58 A  T: 02/17/2015 11:55 A
/do  Job#: 11754990

cc:  Thomas Hernandez, MD

PRISON LITIGATION REFORM ACT

Of 42 U.S.C. § 1997e(a)

Mr. Warren Shafford states that he has met the requirements of the PLRA, 42 U.S.C., pursuant to LEWIS v. WASHINGTON, 300 F.3d 829, 833 (7th Cir. 2002), where Prison Officials fail to respond to his Grievance. (See Inclosure Number 4)

Mr. Warren has made several attempts of inquiries regarding the status of his grievance. He has attached 2(two) responds he received from his Counselor Ms. KNUTSON. (herein, attached Incl. #2, and Incl. #3), stating "it is still pending." Grievance is also enclose as inclosure Number 1.

Prior to the filing of this civil suit, after several attempts to get a status on his grievance, Grievance Officer-James MARTENS, finally reponds to Petitioner's Grievance, Medical Treatment, #14-12-112, dated 12-02-2014, where Petitioner, Shafford, finally submits it to the A.R.B. to Appeal the CAO's concurrence of Grievance, herein, attached as Inclosure #5.

Upon response from A.R.B, Peitioner, Warren Shafford, will immediately forward to this Court as an addition of exhibits to be considered in his complaint.

Mr. Shafford, Petitioner submits his § 1983 claim at this time to avoid the timeframe limitation inwhich to file his lawsuit within the required time limitation.

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: 12/2/2014 | Offender: (Please Print) WARREN SHAFFORD | ID#: R26030 |
|---|---|---|
| Present Facility: DIXON C.C. | Facility where grievance issue occurred: DIXON C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] ADA Disability Accommodation
- [ ] HIPAA
- [ ] Other (specify): 14-12-14 12

- [ ] Disciplinary Report: _____    _____
                              Date of Report    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): I, SHAFFORD, went to the yard on October 6, 2014 to lift Weights and some thing happen when I, lifted the weight on the seventh time, my right Pectoralis muscle snap from my Deltoid muscle that covering the right shoulder joint. It then was A code 3 call by the yard officer. I was then taken in a Van in "EMERGENCY" to back door of the hospital. Then I, had to wait in extreme Pain, I, seen nurse smotherman, she made me sign a sick call slip and she seen me in severe extreme Pain, she then made me sign A GYM/Yard Restriction. The Nurse smotherman, diagnose the wrong thing, BY given me an memorandum, BY DR. Jill Wahl m.D. who did not even see me. I, At back in that day for sick call, Because of

**Relief Requested:** TO GO HAVE A.M.R.I., AND, THEN GET THE MEDICAL SURGERY DONE BY A PROFESSIONAL DOCTOR WHO'S A SPECIALIST IN Doing THIS TYPE OF SURGERY THAT, I, NEED...

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Mr. Warren Shafford | R26030 | 12 / 3 / 2014 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

| Date Received: _____ / _____ / _____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

| Print Counselor's Name | Counselor's Signature | _____ / _____ / _____ Date of Response |
|---|---|---|

---

**EMERGENCY REVIEW**

| Date Received: 12 / 10 / 14 | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

| Donald Enloe | | 12 / 10 / 14 |
|---|---|---|
| Chief Administrative Officer's Signature | | Date |

INCL. # 1

the severe extreme Pain that, I, was in. I, then saw nurse ELLIS on 10/8/14, HE said that; I, was going to see PA DYER on 10/10/14, I said but, I'm in Pain right now! He gave me IBUPROFEN 200 MG TAB (Sick-call Pack), Too me it seem like it did no good, I could not sleep, BECause; of the Pain. I, did see PA DYER on 10/10/14, I think she made arrangement for XRaYs for me, BECause; of the Pain, I, was in. I, then saw Nurse LANCE on 10/20/14, BECause, the extreme pain, I, was in, she said that, I, was going out for xray. on 10/31/14, I, saw PA DYER she told me again you needed a xray and I, saw her put on paper. Then on November 3, 2014, I, had an X ray. THEN, on November 5, 2014 they gave me medicine, NAPROXEN 500 MG AND METHOCARBAMOL 500 MG TAB... ON 11/10/2014, I talk to DR. WAHL, SHE said that, I, NEEDED an M·R·I, I'm still in Pain, my shoulder on the right side and my neck, AFTER the medicine where off.

~~Physi~~ I saw DR. WAHL Today 12/2/14 she said I was going to have Physical therapy AND she said I was going to see A surgeon. my Pass was At 12:35 I got Back At about 5:40 pm. ON, 12/2/14, She, DR. WAHL, Also, said that she did not tell me about A M·R·I AND that not true, Thats A FACT she did I wrote it down, and I, will take A lie detector test to what she said on 11/10/14, about the M·R·I; AND about what the nurse's did, ON 10/6/14 Nurse smothermen Purposely ignoring my serious medical needs, BECause of the other Nurses, They told her that, I, was Just trying to get some IBUPRFEN and I, could not get it, They thought I Was Faking, The Nurse's.

## Deliberate Indifference

1. They, the nurse's Ignoring my obvious conditions.
2. Failure to investigate enough to make an informed judgment;
3. They Delay my treatment.

INCL #1 (a)

10/6/15
Grievance #
14-12-112
is still
pending.

L. Knutson
CCII
Dixon CC

*L. Knutson*

INCL. #2

**Illinois**
Department of
**Corrections**

26/04

TO: Shafford R2l003?  DATE: 11/10/15

FROM: Knutson

DEPT: _____

RE: _____

☐ Take Necessary action     ☐ Per Your Request
☐ For Your Approval         ☐ See Me About Attached
☐ Reply                     ☐ Return
☐ For Your Comments         ☐ File
☐ For Your Information      ☐ Route
☐ Draft (Letter) (Memo) For My Signature

Remarks:

Your Medical grievance
14-12-112 is pending.

Your $5 copay grievance
needs to be submitted
to the Grievance Officer
level.

INCL #3

"PLRA REQUIREMENT"

**Right to appeal continued**

## -to appeal and new trial

s

Daily News
y 2003

estion has arisen as to whether an appeal
iew trial order can be brought other than
to Supreme Court Rule 306(a). Is there a
appeal from a new trial order after the
rial? There does not seem to be any basis
d it has been stated that there is no right
al decisions. Yet, the reviewing courts
me to assume such a right, without any
it. In Baumgardner v. Boyer, 384 Ill. 584,
2d 247 (1944), the Illinois Supreme Court
ed the manner in which an appeal from an
the trial court granting a new trial is to be
he Supreme Court noted that historically
ting of a new trial was not deemed to be a
et and no review of such an order was
. The court stated that the legislature had
l for the appeal of such orders under
77 of the Civil Practice Act (see
tat. 1941, Ch. 110, par. 201). It observed
legislature may have enacted the section
erve to a litigant a verdict that was
d by the record and supported by the
ny in the case. Section 77 of the Civil
 Act provided that an order granting a new
nll be deemed to be a final order, but no
may be taken therefrom except upon leave
by the reviewing court. (The court noted in
that it recognized that the legislature could
ake a non-final order final). The court
ed that the legislature meant to confer
ne courts the power to review new trial
and further that the petition for leave to
procedure was the only way in which to
such an order and no other. Thus, there
l appeal as of right from such an order by
of appeal, and the denial of a right to appeal
 trial order" was constitutional. See also
iel v. Bernat, 85 Ill.App.2d 175, 228 N.E.2d
967) (to same effect). In Rodriguez v.
o Transit Authority, 58 Ill.App.2d 150, 206
. 828 (1965), the 3d District Appellate Court
"Illinois reviewing courts have dismissed
ited direct appeals from orders vacating
ents and granting new trials, and have held-
e provisions of the leave to appeal statute
 be followed. S.J. Blume Inc. v. Vernon
Flower Co., 331 Ill.App. 618, 73 N.E.2d 359.
these cases may be distinguished in that
did not involve appeals from orders
ssing technical finality, they do demonstrate
urt's insistence that the correct procedure be
ed. "And in Baumgardner v. Boyer, 364 Ill.
52 N.E.2d 247, the court made this
ation: "Under the terms of section 77, we
e it was the intention of the legislature that
peal should be taken from an order granting
v trial except in the manner prescribed by
n 77 and in accordance with Rule 30 of this
t.
"Where a rule or a statute expressly
es the procedure to be taken on an appeal
rocedure must be followed exactly. We hold
iore that the leave to appeal procedure
ted by Supreme Court Rule 30 is the
sive method of securing appellate review of a
court setting aside a verdict and awarding a
trial." The reason for tracing this history of
ions stating that an appeal from a new trial

order is not a right but is discretionary with the
Appellate Court is that a recent case before the
Appellate and Supreme courts has contradicted
this authority – without citation to any source for
the right to appeal form such an order. The two
decisions in the same case instead assume there
is a right to appeal from such an order even if after
the first trial a petition for leave to appeal was
denied. The time for appeal as of right is,
according to those decisions, after the second
trial. The origin of this concept is nowhere
explained. In Stephens v. Taylor, 331 Ill.App.3d
508, 771 N.E.2d 638 (2002), the 3d District
Appellate Court stated without authority that,
"Parties are entitled to one appeal from an order of
the trial court granting the new trial. See 134 Ill.2d
R. 306(a)(1)." Of course, Rule 306(a)(1) provides
no such right. Unfortunately, the Illinois Supreme
Court issued an opinion reversing the Appellate
Court decision for other reasons. Stephens v.
Taylor, 2003 WL 21404650 (June 19). Justice
Charles E. Freeman discussed an issue in his

### Inmate wins go-ahead for suit against jailers

Chicago Daily Law Bulletin
August 21, 2003

Jail officials' delay in responding to inmate's
excessive force grievance permitted inmate's
lawsuit to proceed despite his failure to exhaust
administrative remedies. In an effort to stem the
proliferation of lawsuits by prison and jail inmates,
Congress enacted the Prison Litigation Reform
Act, which limits prisoner access to the courts.
One of the requirements of the PLRA, 42 U.S.C.
sec1997e(a), is that prisoners exhaust
administrative remedies before filing suit. The
exhaustion requirement is not absolute, however,
and officials cannot avoid lawsuits by simply
ignoring internal grievances. Today's column
reviews a recent federal court opinion that rejected
the Cook County sheriff's efforts to stall a federal
lawsuit based on an inmate's purported failure to
exhaust his administrative remedies. Barrera v.
Acting Executive Director of the Cook County
Department of Corrections, et al., No. 03 C 1926
(N.D. Ill., Aug. 18). On April 6, 2001, Armando
Barrera was being held at the Cook County Jail
awaiting trial on charge for which he was later
convicted and sentenced to prison. On that
evening, Barrera alleged that he was beaten for no
reason by members of the sheriff's Special
Operations Response Team, or SORT, and
subsequently denied medical treatment. Barrera
allegedly suffered injuries that left him in pain for
several months. Barrera said that immediately
following the incident, he attempted to file with the
sheriff's department a grievance reporting the
assault. Barrera claims that his correctional
counselor never met with him to record the
grievance. Two or three weeks after the assault,
Barrera allegedly attempted to report the assault
again, but still received no response. Barrera
allegedly spoke to a counselor three more times in
the next two months, and although promised a
copy of his grievance, he never received one.
Essentially, Barrera claimed, he attempted to
comply with all administrative requirements to

advance his grievance through the sheriff's
department but was stymied by the lack of any
response. On April 4, 2003, just two days before
the expiration of the statute of limitations, Barrera
filed a federal civil rights lawsuit against several
SORT members and other jail officials, alleging
that the use of excessive force against him and
denial of medical treatment violated his
constitutional rights. The defendants moved to
dismiss pursuant to the PLRA, contending that
Barrera's grievance was still open and under
investigation, and that as a result Barrera had yet
to exhaust the requisite administrative remedies.
Following briefing, U.S. District Judge Matthew F.
Kennelly denied the dismissal motion. In doing so,
Kennelly initially reviewed the statutory exhaustion
requirement: "The PLRA provides that a prisoner
may not bring an action with respect to prison
conditions until the administrative remedies
available to the prisoner have been exhausted. 42
U.S.C. sec 1997e Kennelly explained, however,
that the exhaustion requirement could not be
utilized to delay or bar a federal suit when the
failure to exhaust was the fault of prison officials:
"When prison officials fail to respond to a
prisoner's grievance, however, then administrative
remedies are considered unavailable, and the
prisoner is deemed to have exhausted those
remedies. Lewis v. Washington, 300 F.3d 829,
833 (7th Cir. 2002) Administrative remedies are
deemed exhausted and thus unavailable when a
prisoner takes every opportunity to obtain relief
through outlined procedures but is stymied by
prison officials' action or inaction. This court has
previously held that when a prisoner does the best
he can to bring his problems to the attention of the
proper authorities through the grievance process
and the evidence shows that the grievances were
ignored, then the prisoner has satisfied the PLRA's
exhaustion requirement. Hardy v. Aguinaldo, No.
02 C 3614, 2002 WL 31017611, at *3-4 (N.D. Ill.
Sept. 10, 2002)... "In one case, after seven
months without a response, another judge in this
district found that amount of time to be 'more than
reasonable to respond to the grievance. In light of
that explanation, Kennelly concluded that any
failure to exhaust administrative remedies was the
fault of Cook County Jail officials, rather than
Barrera, and that the motion to dismiss had to be
denied: "Barrera filed a grievance shortly after the
incident and has attempted to follow up regarding
the status of his grievance, but he has been
completely stonewalled by the jail's authorities. It
was not until after he filed suit, just before the
statute of limitations on his section 1983 claims
was apparently about to run ... that the authorities
saw fit to tell Barrera (through the attorney we
appointed after he filed suit) that his grievance
was supposedly still being considered. "At this
point, 28 months have passed since Barrera's
alleged beating, yet the sheriff has provided no
information as to what has been done to consider
Barrera's grievance or investigate his allegations,
and when (if ever) this 'process' will be completed.
In sum, the sheriff's submission is woefully
deficient and does not support a finding that
Barrera has an 'available' administrative remedy.
"Barrera has done everything one in his position
can do to take advantage of the grievance
procedure, but nothing has happened on the jail's
end. A 2 1/2-year wait is more than sufficient to
establish the lack of an available administrative
remedy. To find otherwise would permit officials of
correctional institutions to exploit the exhaustion
requirement through indefinite delay in responding
to grievances.

Continued >>>>>                Continued >>>>>>

INCL. #4

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

| Grievance Officer's Report |
|---|

**Date Received:** 1-25-16          **Date of Review:** 1-26-16          **Grievance #** (optional): 14-12-112

**Offender:** Warren Shafford                                                                **ID#:** R26030

**Nature of Grievance:** Medical Treatment

Note: Inmate Shafford re-filed Grievance 14-12-112 claiming no response. Grievance records confirm this grievance was pending Health Care response. There is no record this grievance was responded to by health care. Based on this, I recommend the grievance be considered timely.

**Facts Reviewed:** This Grievance Officer notes Inmate Shafford grievance claim regarding pectorial muscle concerns. In accordance with Department Rule 415, all treatment must be ordered by the MD and not a matter of inmate preference. This Grievance Officer has no authority to evaluate clinical decisions made by licensed physician.

Per Health Care Administration, Inmate Shafford has a pending follow up ortho appt. pending at UIC. He has been seen multiple times by providers and has ongoing Physical Therapy currently.

**Recommendation:** Based upon a total review of all available information, this Grievance Officer is reasonably satisfied Inmate Shafford has access to health care and continued care. No further action is recommended.

cc: Health Care

James Martens/ Grievance Officer                                         _James Martens_
Print Grievance Officer's Name                                          Grievance Officer's Signature
**(Attach a copy of Offender's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

**Date Received:** 1-26-16          ☒ I concur          ☐ I do not concur          ☐ Remand
**Comments:**

_Todd Edwards_                                                              1-26-16
Chief Administrative Officer's Signature                                              Date

| Offender's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Warren Shafford  ADA_          R26030          2/8/2016
Offender's Signature                          ID#                    Date

_INCh: #5_

Distribution: Master File; Offender                          Page 1                          DOC 0047 (Rev. 3/2005)
Printed on Recycled Paper

WARREN SHAFFORD
#R26030, D.C.C.
2600 N. BRINTON AVE.
DIXON, IL 61021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
327 S. COURT STREET
ROCKFORD, IL 61101

①

LEGAL MAIL